UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BLUE HERON COMMERCIAL GROUP,
INC. f/k/a Eagle Crest
Manufactured Home Park,
Inc.,

    Plaintiff,

v.                          Case No: 2:18-cv-467-FtM-29UAM

LEE WEBBER and GERALD T.
FILIPIAK,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on the defendants' Motion for Summary Judgment (Doc. #26) filed on September 5, 2018. Plaintiff filed a Response (Doc. #34) on October 8, 2018 and defendants filed a Reply (Doc. #43) on October 25, 2018. For the reasons set forth below, the motion is granted.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material"

if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

II.

The undisputed facts are as follows: Eagle Crest Manufactured Home Park, Inc. (Eagle Crest) was a New York corporation owned by Ray T. Webber and defendants Gerald Filipiak and Lee Webber (collectively, Defendants). (Doc. #2, ¶¶ 14-17; Doc. #26, ¶¶ 2,6.) Ray Webber, Gerald Filipiak, and Lee Webber each owned a one-third share of Eagle Crest. (Doc. #2, ¶ 17; Doc. #26, ¶ 6.) In 2001, Eagle Crest sold a manufactured home park and reinvested the proceeds into four companies wholly-owned by Eagle Crest. (Doc. #2, ¶¶ 18-19; Doc. #26, ¶ 11.)

The operations of the four wholly-owned Eagle Crest companies were governed by a shareholder agreement (the 2002 Shareholder Agreement) executed by Ray Webber and Defendants on April 29, 2002. (Doc. #2, ¶ 20; Doc. #2-1.) On November 29, 2007, the parties entered into a new shareholder agreement (the 2007 Shareholder Agreement), which governed the operations of the four wholly-owned Eagle Crest companies. (Doc. #2, ¶¶ 23, 25; Doc. #2-2; Doc. #2-3.)

On March 13, 2013, Ray Webber filed a law suit against Defendants in New York state court.[1] (Doc. #2, ¶ 51; Doc. #26-9, pp. 117-128.) On June 3, 2013, Defendants resigned as officers of

---

[1] Duane Webber, Ray Webber's son and assignee of some of Ray Webber's rights, was later added as a plaintiff to the New York litigation. (Doc. #26-9, p. 150.)

Eagle Crest and redeemed their shares in Eagle Crest. (Doc. #2, ¶ 32; Doc. #26, ¶ 18.) After Defendants redeemed their interests in Eagle Crest, Ray Webber was the sole shareholder and owner of Eagle Crest. (Doc. #2, ¶ 32; Doc. #26, ¶ 19.) On December 26, 2013, Ray Webber transferred all of Eagle Crest's assets and rights to plaintiff Blue Heron Commercial Group, Inc. (Blue Heron). (Doc. #2, ¶¶ 15, 53; Doc. #26, ¶ 20.)

On August 8, 2014, Ray Webber filed a second amended complaint – the operative complaint at the conclusion of the New York litigation - against Defendants in New York state court. (Doc. #26-9, pp. 144-54.) In relevant part, the second amended complaint alleged that, pursuant to the 2007 Shareholder Agreement, Defendants failed to make the proper payments to Ray Webber upon the redemption of their interests in Eagle Crest. (Id., pp. 151-52.) This claim was premised on the 2007 Shareholder Agreement being interpreted in conjunction with the 2002 Shareholder Agreement. (Id.)

The case proceeded to a bench trial in New York state court. (Doc. #26-9, pp. 30-35.) At the bench trial, Ray Webber submitted as evidence his "Final Even-up Calculations" – based upon his damages expert's report – which provided that Defendants owed Ray Webber "$652,807" for "Capital Expenditures." (Doc. #26-20, pp. 215, 218.) Ray Webber's damages expert testified at the bench trial that Defendants owed Ray Webber for unreimbursed capital

4

expenditures based upon his interpretation of both the 2002 Shareholder Agreement and the 2007 Shareholder Agreement. (Doc. #26-12, pp. 239-41.)

At the conclusion of the bench trial, Ray Webber requested in his proposed findings of fact that "Capital Expenses . . . be paid back to [Eagle Crest]." (Doc. #26-22, p. 59.) The court rejected Ray Webber's capital expenditure claim and ultimately entered judgment on that claim in favor of Defendants and against Ray Webber. (Doc. #26-9, pp. 32-35.) Ray Webber then appealed the trial court's judgment to the New York Supreme Court Appellate Division, Fourth Department, and the Fourth Department affirmed the trial court's judgment and found that Ray Webber was "not entitled to capital expenditure costs under the 2007 agreement." (Doc. #26-25, p. 4.) In Webber v. Webber, 29 N.Y.3d 915 (2017), the New York Court of Appeals denied Ray Webber's motion for leave to appeal the Fourth Department's ruling. (Doc. #26, ¶ 39.)

Blue Heron filed the instant Complaint (Doc. #2) against Defendants on July 5, 2018.[2] Blue Heron asserts claims against Defendants for breach of contract (Count I) and unjust enrichment (Count II). Blue Heron alleges that Defendants owe Blue Heron

---

[2] Blue Heron originally filed this lawsuit in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. (Doc. #2.) Defendants have since removed this action to this Court on the basis of diversity jurisdiction. (Doc. #1.)

5

$652,807.00 in unreimbursed capital expenditures for construction related expenses pursuant to the 2007 Shareholder Agreement.

**III.**

Defendants now move for summary judgment on Counts I and II. Specifically, Defendants argue that Blue Heron's claims are barred by the doctrines of *res judicata* and collateral estoppel.

*Res judicata* is a judicially crafted doctrine which "precludes the relitigation of all claims falling within the scope of [a prior] judgment, regardless of whether or not those claims were in fact litigated . . . ." Paramount Pictures Corp. v. Allianz Risk Transfer AG, 96 N.E.3d 737, 743 (N.Y. 2018)(quotation and citations omitted).³ It is intended to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. (citation and quotation omitted).

The doctrine of *res judicata* "gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily

---

³ Whether *res judicata* applies in this case is governed by New York law. See Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985) ("Where the first suit is brought in state court and the second suit is brought in federal court based on diversity, state law of *res judicata* is to be applied." (citation omitted)).

6

decided therein." Tamily v. Gen. Contracting Corp., 620 N.Y.S.2d 506, 509 (N.Y. App. Div. 1994). To establish that *res judicata* bars a subsequent action, a party must demonstrate that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same parties or those in privity with them; and (3) the claims alleged in the subsequent action were raised, or could have been raised, in the previous action. Paramount, 36 N.Y.S.3d at 13-14.

Defendants argue that the instant action is barred by the doctrine of *res judicata* because Blue Heron's Complaint alleges the same capital expenditure claim asserted by Ray Webber in New York state court, which was decided on the merits in Defendants' favor. Defendants further assert that Blue Heron was in privity with Ray Webber during the prior litigation because, at the time Ray Webber filed the second amended complaint in the prior action, Ray Webber was Eagle Crest's sole owner and Eagle Crest had transferred all of its rights and assets to Blue Heron.

Blue Heron, however, disputes that it was in privity with Ray Webber during the New York litigation. Blue Heron reasons that although Ray Webber was Eagle Crest's sole owner during the trial in New York state court, Defendants failed to provide Ray Webber with some of Eagle Crests records, "undertook multiple corporate actions without Ray Webber's consent or knowledge," and were not "cooperative in transferring the management of Eagle Crest to Ray

7

Webber." (Doc. # 34, p. 8.)  Blue Heron further reasons that it was not in privity with Ray Webber during the prior action because the instant Complaint seeks the recovery of unreimbursed capital expenditures, while the second amended complaint in the New York litigation contains "no allegations or references whatsoever regarding a reimbursement of capital expenses." (Id., p. 9.)

Under New York law, "privity" is "an amorphous concept" which "does not have a technical and well-defined meaning." Doe v. New York Univ., 786 N.Y.S.2d 892, 898 (N.Y. Sup. Ct. 2004)(quotations and citations omitted). As a general principle, privity exists where "the connection between the parties [is] such that the interests of the nonparty can be said to have been represented in the prior proceeding" so that "the nonparty may be thought to have had a vicarious day in court." Slocum ex rel. Nathan A v. Joseph B, 588 N.Y.S.2d 930, 931 (N.Y. App. Div. 1992). This determination requires "a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation . . . ." Evergreen Bank N.A. v. Dashnaw, 668 N.Y.S.2d 256, 258 (N.Y. App. Div. 1998).

Here, the Court finds that Blue Heron was in privity with Ray Webber at all relevant times during the New York litigation. Although Ray Webber was a minority shareholder in Eagle Crest when he filed his initial complaint in New York state court against Defendants, he was the sole owner of Eagle Crest - which had

transferred its rights and assets to Blue Heron - when he filed his second amended complaint, which was the operative complaint at the time of the New York court's judgment.[4] Moreover, Blue Heron seeks the same relief in this case as Ray Webber sought in the New York litigation: the recovery of $652,807 in unreimbursed capital expenditures pursuant to the 2007 Shareholder Agreement. See (Doc. #26-20, pp. 215, 218)(Ray Webber's "Final Even-up Calculations" from the New York bench trial, providing that Defendants owed Ray Webber "$652,807" for "Capital Expenditures").

Further, the Court finds no merit in Blue Heron's contention that, because the second amended complaint in the New York action did not explicitly reference the "reimbursement of capital expenses," its interests in this case are different from Ray Webber's interests in the previous litigation. (Doc. # 34, p. 9.) Although the second amended complaint in the New York action did not make such a specific reference, it is clear that Ray Webber sought to recover $652,807 in unreimbursed capital expenditures

---

[4] While Defendants may have improperly withheld documents from Ray Webber and engaged in other improprieties, that does not alter the fact that Blue Heron's interests were represented in the New York action. See Slocum, 588 N.Y.S.2d at 932 (noting that "the concept of privity as employed in *res judicata* doctrine is not limited to 'conventional privity,'" but instead focuses on whether the nonparty's interests were represented in the prior action (citations omitted)). Indeed, after the bench trial in the New York case, Ray Webber requested in his proposed findings of fact that "Capital Expenses . . . be paid back to [Eagle Crest]." (Doc. #26-22, p. 59.)

9

pursuant to the 2007 Shareholder Agreement during the New York bench trial – the same relief Blue Heron seeks in this case.[5] (Doc. #26-20.) Indeed, Ray Webber unsuccessfully argued on appeal that the New York trial court erred "[b]y refusing to award capital expenditure costs to [Ray Webber]" pursuant to the 2007 Shareholder Agreement. (Doc. #26-23, p. 1); see also Webber v. Webber, 145 A.D.3d 1499, 1502 (N.Y. App. Div. 2016)(finding that Ray Webber was "not entitled to capital expenditure costs under the 2007 agreement").

Because Ray Webber was Eagle Crest's sole owner when he filed his second amended complaint seeking to recover the same unreimbursed capital expenditures sought in this case, and since Blue Heron was the transferee of Eagle Crest's rights at that time, Blue Heron "may be thought to have had a vicarious day in [New York] court" based upon the claims asserted by Ray Webber.[6] Slocum,

---

[5] The Court further rejects Blue Heron's assertion that it was not in privity with Ray Webber because recovery by Blue Heron in this case would have different tax implications than recovery by Ray Webber would have had in the New York litigation. The different tax implications are immaterial to the Court's privity analysis because, as in the New York action, Blue Heron's claim for unreimbursed capital expenditures is premised on the 2007 Shareholder Agreement being interpreted in conjunction with the 2002 Shareholder Agreement. See Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008) ("Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong *res judicata* applies." (applying New York law)(citations omitted)).

[6] Although Defendants opposed Blue Heron's attempt to intervene in the New York litigation, that does not undermine the

588 N.Y.S.2d at 931. The Court further finds that the New York litigation involved an adjudication on the merits of the same claims asserted in this case. Although Count II of the Complaint in this case asserts a claim for unjust enrichment, which was not alleged in the New York litigation, it is premised on the same breach of the 2007 Shareholder Agreement claim adjudicated on the merits, and affirmed on appeal, in New York state court.

In sum, the Court finds that Blue Heron's Complaint asserts claims against Defendants which were previously asserted by its privy, Ray Webber, and adjudicated on the merits in New York state court. Accordingly, Counts I and II of the Complaint are barred by the doctrine of *res judicata*. Defendants' motion is therefore granted.[7]

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. #26) is **GRANTED** and the Complaint is **dismissed with prejudice**.

---

Court's finding that Blue Heron, as the transferee of Eagle Crest's rights, was effectively vicariously represented by Ray Webber in the New York action. Indeed, in an affidavit in support of adding Blue Heron as a plaintiff in the New York litigation, Ray Webber's son and co-plaintiff asserted that if Blue Heron were added as a party, "the substance of [their] claims [would] remain[] unchanged." (Doc. #26-10, p. 215.)

[7] Because the instant action is barred by the doctrine of *res judicata*, the Court need not consider whether collateral estoppel also applies in this case.

2. The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of March, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record